IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 28, 2020
Lyle W. Cayce
Clerk

No. 19-51169

JULIE O'SHAUGHNESSY, Individually, and on behalf of all others similarly situated,

        Plaintiff - Appellee

v.

YOUNG LIVING ESSENTIAL OILS, L.C., doing business as Young Living Essential Oils; YOUNG LIVING FOUNDATION, INCORPORATED; MARY YOUNG, Co-conspirator; JARED TURNER, Co-conspirator; BENJAMIN RILEY, Co-conspirator,

        Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-412

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

    Julie O'Shaughnessy filed suit in federal district court against Young Living Essential Oils, L.C. and related parties[1] (collectively referred to as

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The named defendants in the suit are: Young Living Essential Oils, L.C., d/b/a Young Living Essential Oils, Young Living Foundation, Inc., Mary Young, Jared Turner, and Benjamin Riley.

Plaintiff's Exhibit

A

Case: 19-51169　　Document: 00515397461　　Page: 2　　Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 2 of 12

No. 19-51169

"Young Living" or "YL") asserting various claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"). In response to O'Shaughnessy's suit, Young Living Essential Oils and the Young Living Foundation filed motions to compel arbitration. The district court denied the motions and Young Living filed this interlocutory appeal. We AFFIRM.

## I. Facts & Procedural Background

In 2015, O'Shaughnessy joined Young Living after attending a party hosted by a friend. Julie joined the company as a member by signing an online document titled the Young Living Member Agreement ("Agreement"). The Agreement contains a "Jurisdiction and Choice of Law" clause that provides:

> The Agreement will be interpreted and construed in accordance with the laws of the State of Utah applicable to contracts to be performed therein. Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah.

The Agreement also contains what is commonly known as a "merger clause" or "integration clause" that reads:

> The Agreement constitutes the entire agreement between you and Young Living and supersedes all prior agreements; and no other promises, representations, guarantees, or agreements of any kind will be valid unless in writing and signed by both parties.

The Agreement incorporates by reference two other documents: (1) the Policies and Procedures ("P&Ps") and (2) the Compensation Plan.[2] O'Shaughnessy was

---

[2] There are multiple, sometimes updated, versions of these three documents throughout the record on appeal. We have used the versions of the documents that Young Living submitted as exhibits to its Motion to Compel Arbitration filed in the district court on June 11, 2019. Although the language occasionally has minor variations among versions, the substance of the language relevant to this appeal remains the same throughout.

Case: 19-51169 Document: 00515397461 Page: 3 Date Filed: 04/28/2020
Case 1:19-cv-00412-LY Document 64-1 Filed 04/29/20 Page 3 of 12

No. 19-51169

not required to sign either of these online documents. The Compensation Plan is silent as to dispute resolution. The P&Ps, however, contain an arbitration clause that states:

> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration. The parties waive all rights to trial by jury or to any court. The arbitration will be filed with, and administered by, the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services (JAMS) under their respective rules and procedures.
>
> . . .
>
> Notwithstanding the foregoing, nothing in these Policies and Procedures will prevent either party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction, or other relief available to safeguard and protect its intellectual property rights and/or to enforce its rights under the non-solicitation provision of Section 3.11.1.2.[3]

The P&Ps also provide that:

> Jurisdiction and venue of any matter not subject to arbitration will reside in any state or federal court located in Salt Lake City, Utah, unless the laws of the state or country in which the member resides expressly require otherwise, despite this jurisdiction clause. By signing the Agreement, you consent to jurisdiction within these two forums. The laws of the state of Utah will govern disputes involving the Agreement.[4]

The P&Ps do not contain any language to the effect that they supersede or trump in the event of a conflict with another document.

---

[3] *See* P&Ps 13.2.2.
[4] *See* P&Ps 13.2.3.

3

No. 19-51169

On April 12, 2019, O'Shaughnessy, individually and on behalf of all those similarly situated, filed a class action suit in the U.S. District Court for the Western District of Texas against Young Living for damages and other relief under RICO. *See* 18 U.S.C. § 1961, *et seq*. She alleged that "Young Living operates an illegal pyramid scheme created under the guise of selling essential oils for quasi-medicinal purposes." She argued that hundreds of thousands of putative class members just like her, paid and lost hundreds (and in some cases thousands) of dollars to become Young Living Essential Rewards enrollees based on the promise of financial and physical health, through its brand of essential oils. She contended that Young Living falsely represents to its members that joining the company—which requires regular monthly payments—will result in wealth as long as they continue to solicit additional recruits to become members of the company. In reality, she asserted, Young Living has "created nothing more than an unlawful pyramid scheme—the cornerstone of which is Young Living's emphasis on new member recruitment over the sale of products." According to O'Shaughnessy, Young Living's activities violate RICO.

On June 11, 2019, Young Living filed two motions to compel arbitration arguing that the arbitration provision in the P&Ps required the parties to arbitrate their dispute. O'Shaughnessy responded on June 18, 2019, countering that an irreconcilable conflict existed between the Jurisdiction and Choice of Law clause in the Agreement and the arbitration clause in the P&Ps. On this basis she argued that there was no "meeting of the minds" between the parties with regard to arbitration. She also contended that any ambiguities in the contract should be construed against the drafter, Young Living.

The matter was submitted to the magistrate judge who issued a report and recommendation that the district court deny Young Living's motions to

4

Case: 19-51169    Document: 00515397461    Page: 5    Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 5 of 12

No. 19-51169

compel on grounds that the Jurisdiction and Choice of Law clause[5] in the Agreement and the arbitration clause in the P&Ps irreconcilably conflicted with each other and could not be harmonized. Applying Utah contract law, the magistrate judge concluded that there could not have been a "meeting of the minds" between the parties with respect to arbitration. The magistrate judge also noted that, at best, the documents drafted by Young Living were ambiguous as to any agreement to arbitrate and the ambiguity should be construed against the drafter. The district court agreed and adopted the magistrate judge's report and recommendation for the reasons stated therein. In its order denying Young Living's motions to compel, the district court also dismissed as meritless Young Living's argument that a paragraph it calls the "Arbitration Carve-Out" in the P&Ps clarifies that the Jurisdiction and Choice of Law clause in the Agreement was only intended to cover a sub-set of disputes not subject to arbitration, implying that all other disputes between the parties are subject to arbitration.

Young Living filed this interlocutory appeal requesting expedited consideration so that the appellate proceedings would take place prior to the class certification proceedings set for July 2020. The district court has now stayed all proceedings pending the resolution of this appeal.

## II. Discussion

We review the district court's denial of a motion to compel arbitration de novo. *Morrison v. Amway Corp.*, 517 F.3d 248, 253 (5th Cir. 2008). In ruling on a motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate the particular type of dispute at issue. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). In answering this question, we consider: "(1) whether there is a valid agreement to arbitrate

---

[5] The magistrate judge often refers to this clause as the Forum Selection Clause.

Case: 19-51169 Document: 00515397461 Page: 6 Date Filed: 04/28/2020
Case 1:19-cv-00412-LY Document 64-1 Filed 04/29/20 Page 6 of 12

No. 19-51169

between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). This policy, however, "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* (quoting *Morrison*, 517 F.3d at 254). Given the Supreme Court's determination "that arbitration is a matter of contract," *AT&T Mobility L.L.C. v. Concepcion*, 563 U.S. 333, 339 (2011), courts apply "ordinary state-law principles that govern the formation of contracts" in determining whether an agreement to arbitrate is valid. *Carey*, 669 F.3d at 205. Both parties agree that Utah law applies in this case.

Utah law provides that "[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration. Consideration sufficient to support the formation of a contract requires that a performance or a return promise must be bargained for." *Trans-Western Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1177 (10th Cir. 2016) (quoting *Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998)). To form "an enforceable contract, there must be a meeting of the minds on the essential terms of the agreement." *Trans-Western Petroleum,* 830 F.3d at 1176 (citing *Zaccardi v. Zale Corp.*, 856 F.2d 1473, 1478 (10th Cir. 1988)); *see also Richard Barton Enters., Inc. v. Tsern*, 928 P.2d 368, 373 (Utah 1996) ("It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract.").

As the Tenth Circuit has observed, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (*see United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

Case: 19-51169    Document: 00515397461    Page: 7    Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 7 of 12

No. 19-51169

582 (1960)). While "the presence of an arbitration clause generally creates a presumption in favor of arbitration," *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995), the "presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Bellman v. i3Carbon, L.L.C.*, 563 F. App'x 608, 613 (10th Cir. 2014) (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002)); *see also Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."). "[C]onflicting details in [] multiple arbitration provisions indicate[s] that there [is] no meeting of the minds with respect to arbitration." *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016).

Here, the district court agreed with the magistrate judge's conclusion that there was no "meeting of the minds" between Young Living and O'Shaughnessy with respect to arbitration. We also agree. The P&Ps, incorporated by reference into the Agreement, contain the following pertinent language: "If mediation is unsuccessful, *any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration.*" (emphasis added). This language is in direct conflict with the Jurisdiction and Choice of Law clause in the Agreement that "Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah." Additionally, there is no limiting language in the Jurisdiction and Choice of Law paragraph, or anywhere else in the Agreement, suggesting that it only applies to disputes not subject to arbitration.[6] Moreover, the Agreement, and not the P&Ps, contains the merger

---

[6] Other paragraphs in the P&Ps do contain such limiting language so the absence of this language in the Jurisdiction and Choice of Law clause in the Agreement is telling. *See*

Case: 19-51169 Document: 00515397461 Page: 8 Date Filed: 04/28/2020
Case 1:19-cv-00412-LY Document 64-1 Filed 04/29/20 Page 8 of 12

No. 19-51169

clause with language indicating that it supersedes other agreements. Consequently, our reading of these two conflicting provisions reveals that they cannot be harmonized.

The Tenth Circuit addressed a situation like this in *Bellman v. i3Carbon, L.L.C.*, 563 F. App'x at 610. In *Bellman*, there were conflicting provisions in the Operating Agreement and the Subscription Agreement between the parties. *Id.* The Operating Agreement contained an arbitration clause stating that disputes of any kind were to be arbitrated while the Subscription Agreement contained a forum selection provision that disputes "shall be adjudicated by a court of competent civil jurisdiction sitting in Denver, Colorado and nowhere else." *Id.* A dispute arose, and the defendants filed a motion to compel arbitration. *Id.* at 609. The district court denied the motion and the Tenth Circuit affirmed concluding that the "[d]efendants have failed to carry their burden of showing that an enforceable arbitration agreement exists . . . While the Operating Agreement provided for arbitration, the Subscription Agreement did not. In our view, the documents . . . do not demonstrate a meeting of the minds regarding arbitration." *Id.* at 614.[7]

The Tenth Circuit addressed another similar fact-pattern in *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798 (10th Cir. 2005). There, the parties entered into a construction contract that contained a clause providing for arbitration of "[a]ny Claim arising out of or related to the Contract." *Id.* at 799. The parties also signed an agreement that contained a "Choice of Forum" clause stating that "Any suit, action or proceeding with

---

P&Ps 13.2.3 ("Jurisdiction and venue of any matter not subject to arbitration will reside in any state or federal court located in Salt Lake City, Utah[.]").

[7] Although not dispositive, the court noted that the subscription agreement, which contained the forum selection provision, contained both parties' signatures while the operating agreement, which contained the arbitration clause, only contained the defendants' signatures. *Id.* at 611.

8

Case: 19-51169    Document: 00515397461    Page: 9    Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 9 of 12

No. 19-51169

respect to this Agreement shall be brought in a court located in Oklahoma County, Oklahoma." *Id.* at 800. Again, the Tenth Circuit affirmed the district court's order denying the contractor's motion to compel arbitration. *Id.* at 802. It explained that

> the Agreement's choice-of-forum clause is compelling evidence against an intent to arbitrate breaches of the Agreement. It states that "[a]ny suit, action or proceeding with respect to this Agreement shall be brought in a *court* located in Oklahoma County, Oklahoma." Given the express language of the documents, we hold that the parties did not intend to arbitrate disputes arising under the Agreement.

*Id.* (emphasis in original) (internal citations omitted) (citing *Spahr*, 330 F.3d at 1269 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted)).

The same logic the Tenth Circuit applied in *Bellman* and *Summit Contractors* is persuasive here.[8] O'Shaughnessy signed one document provided to her by Young Living—the Agreement. The Agreement is roughly two pages and contains the following language with respect to dispute resolution:

> Jurisdiction and Choice of Law
>
> The Agreement will be interpreted and construed in accordance with the laws of the State of Utah applicable to contracts to be performed therein. *Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah.*

---

[8] Although the Tenth Circuit applied Colorado contract law in *Bellman* and Oklahoma contract law in *Summit Contractors*, for purposes of this appeal there is no significant distinction between these and Utah contract law.

Case: 19-51169     Document: 00515397461     Page: 10     Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 10 of 12

No. 19-51169

(emphasis added). As the court observed in *Summit Contractors*, this language is "compelling evidence against an intent to arbitrate breaches of the Agreement." *Id.* at 802.

Nevertheless, as Young Living points out, courts often uphold agreements incorporating by reference other unsigned documents on grounds that contracts are to be construed in a way that gives effect to all of their incorporated parts. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (U.S. 1995) ("[A] document should be read to give effect to all its provisions and to render them consistent with each other."); *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 395-96 (5th Cir. 2002) (reading the arbitration provision and forum selection clause together and noting that "[w]hen several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible." (quoting *Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.*, 671 F.2d 154, 156 (5th Cir. 1982))). Citing to these cases, Young Living argues that because the Agreement and the P&Ps can be harmonized, this court should enforce the arbitration clause in the P&Ps. *See Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 993 (5th Cir. 2019) ("We must 'examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011))). In support of its position, Young Living directs us to language in the arbitration clause that it refers to as the "Arbitration Carve-Out." It reads as follows:

> Notwithstanding the foregoing, nothing in these Policies and Procedures will prevent either party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary

Case: 19-51169     Document: 00515397461     Page: 11     Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 11 of 12

No. 19-51169

> injunction, preliminary injunction, permanent injunction, or other relief available to safeguard and protect its intellectual property rights and/or to enforce its rights under the non-solicitation provision of Section 3.11.1.2.

According to Young Living, this paragraph "specifically excepts a subset of disputes from the [arbitration clause]." Young Living argues that the presence of this "carve-out" means that the Agreement contemplates both litigation and arbitration. So, Young Living avers, we should read the Forum Selection Clauses as only dictating the selected forum for disputes under the Agreement that are not subject to arbitration. Again, we disagree.

First, the Jurisdiction and Choice of Law clause in the Agreement does not contain any limiting language indicating that it only applies to disputes not covered by arbitration. In fact, nowhere in the Agreement is the word "arbitration" even mentioned. Second, the arbitration clause in the P&Ps remains in total conflict with the Jurisdiction and Choice of Law provision in the Agreement and the "Arbitration Carve-Out" does nothing to reconcile that conflict. The arbitration clause's exemption of certain litigatory rights from its purview does not cure its inherent conflict with the Jurisdiction and Choice of Law provision. The two provisions irreconcilably conflict and for this reason, we agree that there was no "meeting of the minds" with respect to arbitration in this case. *See United Steelworkers*, 363 U.S. at 582 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Richard Barton Enters., Inc.*, 928 P.2d at 373 ("An agreement cannot be enforced if its terms . . . demonstrate that there was no intent to contract.").

Finally, citing *Edwards v. Doordash, Inc.*, 888 F.3d 738 (5th Cir. 2018), Young Living argues that "because the Agreement contains a valid and

11

Case: 19-51169   Document: 00515397461   Page: 12   Date Filed: 04/28/2020
Case 1:19-cv-00412-LY   Document 64-1   Filed 04/29/20   Page 12 of 12

No. 19-51169

enforceable delegation clause, this [c]ourt must compel arbitration." In that case we explained that

> A court makes two determinations when deciding a motion to enforce an arbitration agreement. First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement. If the party seeking arbitration argues that there is a delegation clause, the court performs the first step—"an analysis of contract formation"—"[b]ut the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases."

*Id.* at 743-44 (internal citations omitted). Given our determination, however, that there is no valid agreement to arbitrate between the parties, we do not reach the secondary issue of the scope of the arbitration agreement and the effect of the delegation clause on the analysis of that issue. *See Carey*, 669 F.3d at 205 (noting that in ruling on a motion to compel arbitration, the court considers first whether there is a valid agreement to arbitrate and second whether the dispute in question falls within the scope of that arbitration agreement).

### III. Conclusion

For the aforementioned reasons, the district court's order denying Appellants' motions to compel is AFFIRMED.